498 A.2d 374

In re the ESTATE OF Mike KOVALCHICK, Deceased.

**Appeal of Adele BALDWIN, Exceptant.**

Superior Court of Pennsylvania.

Argued April 10, 1985.

Filed July 26, 1985.

Reargument Denied Oct. 7, 1985.

Nicholas F. Lorenzo, Jr., Punxsutawney, for appellant.

David Blakley, DuBois, for appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

The sole issue in this appeal is the sufficiency of the evidence to prove the existence of a common law marriage. The Orphans' Court in Jefferson County concluded that Adele Baldwin, the appellant, had failed to establish that she was the common law wife of the decedent, Mike Koval-chick. Therefore, the court denied appellant the right to take against the decedent's will. We affirm.

After the will of Mike Kovalchick, deceased, had been admitted to probate, Adele Baldwin, alleging that she was Kovalchick's widow, filed an election to take against his will. A master was appointed and conducted an evidentiary hearing, at which conflicting testimony was presented. The master decided the credibility issue adversely to appellant and recommended to the court that it find that appellant and the decedent had not been married. Exceptions were filed and argued, but the court accepted the master's recommendations and found that appellant had failed to prove a common law marriage.

The burden of proving the alleged marriage was on appellant. *Estate of Gavula,* 490 Pa. 535, 540, 417 A.2d 168, 171 (1980). Because the courts have regarded common law marriage as a fruitful source of fraud and perjury, common law marriages are to be tolerated but not encouraged. *In re Estate of Stauffer,* 504 Pa. 626, 629, 476 A.2d 354, 356 (1984); *Estate of Gavula, supra; Wagner's Estate,* 398 Pa. 531, 533, 159 A.2d 495, 497 (1960). Therefore, "the law imposes a heavy burden on one who grounds his or her claim on an allegation of common law marriage. This is especially so where one of the parties is dead and the claim, so grounded, is to share in the distribution of the estate." *Estate of Gavula, supra,* 490 Pa. at 540–541, 417 A.2d at 171. Accord: *In re Estate of Stauffer, supra; Manfredi Estate,* 399 Pa. 285, 159 A.2d 697 (1960); *Baker v. Mitchell,* 143 Pa.Super. 50, 17 A.2d 738 (1941).

In the instant case, the orphans' court found that there had not been a common law marriage. That finding,

if supported by competent evidence, is entitled to the same weight as the verdict of a jury. A decree based thereon will not be reversed in the absence of an abuse of discretion or an error of law. *In re Cummings Estate,* 330 Pa.Super. 255, 261, 479 A.2d 537, 541 (1984).

Appellant testified that in June, 1981 she and the decedent had gone to a family altar in the woods behind decedent's home and there exchanged marriage vows. She produced witnesses who testified that following June, 1981, the decedent had told them of the marriage and referred to appellant as his wife. There was other evidence, however, that decedent had stated, even after June, 1981, that marriage was not for him and that he would never marry. At his funeral, appellant had referred to herself as the decedent's fiancee. Appellant conceded that the decedent had not generally acknowledged their marriage in public, primarily because his relatives did not care for her. She testified that she had moved into the decedent's home in 1977 and that she had lived there with him off and on until 1980. After 1981, she said, "we really lived together, very much." This testimony was corroborated by witnesses called by appellant who had visited decedent's home and had observed her there. It was contradicted, however, by relatives of the decedent who had lived near the decedent and had visited him regularly. They testified that there had been periods of varying duration when appellant had not been present in the decedent's home and that when she had been present, appellant had assumed the role of housekeeper and occupied a separate bedroom.

Marriage is a civil contract in Pennsylvania. "The contract does not require any specific form of words, and all that is essential is proof of an agreement to enter the legal relationship of marriage at the present time." *Estate of Gavula, supra,* 490 Pa. at 540, 417 A.2d at 171. Accord: *In re Estate of Garges,* 474 Pa. 237, 378 A.2d 307 (1977). Because it is often difficult to prove a civil contract of marriage, the law has permitted that it be established by circumstantial evidence. Thus, an inference of marriage

can be drawn, the courts have held, where two absolutely essential elements co-exist: constant cohabitation and general, as distinguished from partial or divided, reputation of marriage. *Estate of Gavula, supra,* 490 Pa. at 540 n. 7, 417 A.2d at 171 n. 7; *Manfredi Estate, supra,* 399 Pa. at 291, 159 A.2d at 700. In *In re Cummings Estate, supra,* a unanimous panel of this Court said, in language which has equal application to the instant case, the following:

Constant cohabitation of a man and woman together with a *general* reputation as husband and wife in their community raise a presumption that the parties have contracted marriage. *In Re Estate of Garges,* 474 Pa. at 241, 378 A.2d at 309; *Manfredi Estate,* 399 Pa. 285, 291, 159 A.2d 697, 700 (1960). *See VanBrakle v. Lanauze,* 293 Pa.Super. 276, 438 A.2d 992 (1981). However, the presumption is rebuttable and it "will wholly disappear in the face of proof that no marriage existed." *Commonwealth ex rel. McDermott v. McDermott,* 236 Pa.Super. [541] at 544, 345 A.2d [914] at 915 [ (1975) ]. Moreover, a presumption of marriage based on cohabitation and reputation *will not* arise where the parties admit that they lived together unmarried up to the time of the alleged agreement to create a marriage relationship. *See Stevenson's Estate,* 272 Pa. 291, 297, 116 A. 162, 164 (1922). Where a relationship between a man and a woman is "illicit and meretricious" in its inception, it is presumed to so continue during the cohabitation of the parties. That presumption will be rebutted only if the consent of both the parties to enter into a valid marriage is established by *clear and convincing* evidence. *Stauffer Estate,* 372 Pa. 537, 539, 94 A.2d 726, 727–728 (1953); *Commonwealth ex rel. DeMarco v. DeMarco,* 166 Pa.Super. 69, 71, 70 A.2d 384, 386 (1950). *See In Re Estate of Garges, supra; Brown v. Atlantic and Gulf Stevedores, Inc.,* 2 Pa. Commw. 481, 279 A.2d 372 (1971). Finally, a claimant who asserts the existence of a marriage bears the burden of proving by clear and convincing evidence that a change in the meretricious status occurred. *See e.g., Common-*

*wealth ex rel. DeMarco v. DeMarco, supra; In Re Estate of Garges, supra.*

*Id.* 330 Pa.Super. at 263–64, 479 A.2d at 542 (emphasis in original) (footnote omitted).

In the present case, the relationship between appellant and the decedent was meretricious at its inception. Therefore, the court could find that it continued to be meretricious unless appellant proved by evidence that was clear and convincing that the meretricious relationship had been superseded by a consensual agreement of marriage. A review of the record in the instant case does not permit us to conclude that the orphans' court abused its discretion when it found that appellant had failed to meet the burden of proving a valid marriage.

Appellant argues that the orphans' court misunderstood the law because it implied in its opinion that she was required to prove cohabitation and reputation in addition to a contract of marriage. Appellant suggests, correctly, that a common law marriage exists whenever an agreement of marriage is entered by an exchange of words in praesenti. Cohabitation and reputation are merely circumstances from which the existence of a contract of marriage can be inferred. Evidence thereof may also "be received and considered in corroboration of testimony that a marriage contract was in fact entered into." *Rager v. Johnstown Traction Co.,* 184 Pa.Super. 474, 477–478, 134 A.2d 918, 920 (1957). The inference of marriage to be drawn from cohabitation and reputation, however, fails upon proof that no marriage contract was entered. *Pierce v. Pierce,* 355 Pa. 175, 179, 49 A.2d 346, 348 (1946); *In re Cummings Estate, supra,* 330 Pa.Super. at 263, 479 A.2d at 542. We are satisfied that these principles were understood and correctly applied by the orphans' court. The master recommended and the court found that appellant had failed to prove either a contract of marriage or cohabitation and reputation. The absence of a general reputation that appellant and decedent were husband and wife was a significant fact in weighing the credibility of appellant's testimony that

an agreement of marriage had been made. An inadvertent suggestion that there must be cohabitation and reputation in addition to contract of marriage was harmless.

Affirmed.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I wholeheartedly agree with the majority opinion that a common law marriage exists whenever an agreement of marriage is entered by an exchange of words *in praesenti.* *In re Estate of Stauffer,* 54 Pa. 626, 476 A.2d 354 (1984); *Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978 (1979); *In re Estate of Gower,* 445 Pa. 554, 284 A.2d 742 (1971); *In re Cummings Estate,* 330 Pa.Super. 255, 479 A.2d 537 (1984). I also agree that cohabitation and reputation are merely circumstances from which the existence of a contract of marriage can be inferred, *In re Manfredi's Estate,* 399 Pa. 285, 159 A.2d 697 (1960); *In re Wagner's Estate,* 398 Pa. 531, 159 A.2d 495 (1960); *In re Estate of Rees,* 331 Pa.Super. 225, 480 A.2d 327 (1984), and that the inference of marriage to be drawn from cohabitation and reputation fails upon proof that no marriage contract was entered. *In re Estate of Rees, supra.*

I can not agree, however, that these principles were understood and correctly applied by the orphans' court.

The settled law in Pennsylvania defines a common law marriage as "a marriage by the express agreement of the parties without ceremony, and almost invariably without a witness, *by words* —not in futuro or in postea, but—*in praesenti,* uttered with a view and for the purpose of establishing the relationship of husband and wife." *In re Manfredi's Estate, supra,* 399 Pa. at 291, 159 A.2d at 700 (emphasis in original). It is my understanding that this is the *only* prerequisite for a common law marriage.

My review of the record does not disclose any point in the proceedings where either the Master or the trial judge ever determined, as a fact, that words constituting a marriage

contract were or were not exchanged between Mike Kowal-chick and Adele Baldwin. Such a finding of fact is necessary, in my view, before any discussion of cohabitation and reputation is warranted.

I would vacate the Decree Nisi and judgment entered thereon and would remand for a finding of fact on this crucial issue and for further proceedings not inconsistent with the views expressed herein.